ORIGINAL

# In the United States Court of Federal Claims

No. 16-391C

(Filed: June 22, 2017)

FILED

JUN 2 2 2017

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| **LUIS A. REYES COLON,** ) | Claim for overseas living quarters |
| ) | allowance; application of the Overseas |
| **Plaintiff,** ) | Differentials and Allowances Act, 5 U.S.C. |
| ) | § 5923(a)(2), and the Department of State |
| **v.** ) | Standardized Regulations, DSSR § 031.12; |
| ) | jurisdiction; eligibility |
| **UNITED STATES,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

Luis A. Reyes Colon, *pro se*, Armed Forces Pacific.

Joseph A. Pixley, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Elizabeth M. Hosford, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Annette T. Perry, Attorney, Litigation Division, United States Army Legal Services Agency, Fort Belvoir, Virginia.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiff, Luis A. Reyes Colon ("Mr. Reyes"), a civilian employee of the United States Department of the Army ("Army"), seeks a living quarters allowance ("LQA") for his employment at the Army Materiel Support Center in South Korea from May 1, 2014 to the present. Mr. Reyes brings his claim pursuant to the Overseas Differentials and Allowances Act ("the Act"), Pub. L. No. 89-554, 80 Stat. 378, 510 (1966) (codified at 5 U.S.C. §§ 5921-28), which authorizes LQA payments for certain federal employees stationed overseas, and Section 031.12 of the implementing Department of State Standardized Regulations ("DSSR"), which establishes LQA-eligibility requirements for employees recruited outside the United States. Mr. Reyes retired from active duty military service in May 2009 after serving in South Korea, and subsequently was employed in South Korea by Serco Inc. ("Serco"), a United States company. He resigned from that position in December 2009 to begin civilian employment with the Army in South Korea, and was granted LQA payments from December 7, 2009 to May 1, 2014. In May 2013, however, the Army informed Mr. Reyes that he was not eligible for LQA payments because an audit had revealed that he did not satisfy the eligibility requirements set forth in DSSR § 031.12(b). Mr. Reyes appealed that determination to the United States Office of

Personnel Management ("OPM"), which ruled against him, and thereafter he brought suit in this court to challenge the Army's interpretation and application of the DSSR.

Pending before the court are Mr. Reyes' and the government's motions for summary judgment pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"). For the reasons stated, Mr. Reyes' motion is denied and the government's motion is granted.

## BACKGROUND

### A. The Overseas Differentials and Allowances Act and the DSSR

The Overseas Differentials and Allowances Act authorizes LQA payments to particular federal civilian employees stationed in foreign areas. *See* 5 U.S.C. §§ 5922-25. The Act specifically provides, in pertinent part, that "[w]hen [g]overnment owned or rented quarters are not provided without charge for an employee in a foreign area," LQA payments "may be granted . . . for rent, heat, light, fuel, gas, electricity, and water." 5 U.S.C. § 5923(a)(2). The President has the authority to promulgate regulations governing the payment of such allowances, 5 U.S.C. § 5922(c), and that authority has been delegated to the Secretary of State, Exec. Order No. 10903, 26 Fed. Reg. 217-18 (Jan. 12, 1961). The Secretary of State accordingly has established LQA-eligibility requirements through the DSSR. *See Roberts v. United States*, 745 F.3d 1158, 1163 (Fed. Cir. 2014). In providing eligibility criteria, the DSSR distinguishes between employees recruited within the United States, *see* DSSR § 031.11, and those recruited outside the United States, *see* DSSR § 031.12. Relevant here, DSSR § 031.12 states in pertinent part:

> [LQA] may be granted to employees recruited outside the United States, provided that:
>
> a. the employee's actual place of residence in the place to which the quarters allowance applies at the time of receipt thereof shall be fairly attributable to his/her employment by the United States [g]overnment; and
>
> b. prior to appointment, the employee was recruited in the United States, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, the former Canal Zone, or a possession of the United States, by:
>
> (1) the United States [g]overnment, including its Armed Forces;
> (2) a United States firm, organization, or interest;
> (3) an international organization in which the United States [g]overnment participates; or
> (4) a foreign government
>
> and had been in substantially continuous employment by such employer under conditions which provided for his/her return transportation to the United States, the Commonwealth of Puerto

> Rico, the Commonwealth of the Northern Mariana Islands, the
> former Canal Zone, or a possession of the United States. . . .

DSSR § 031.12.[1]

The DSSR also delegates authority to the heads of agencies to implement further regulations "with regard to the granting of and accounting for [LQA] payments." DSSR § 013; *see also Roberts*, 745 F.3d at 1164 (quoting DSSR § 013 and noting that "the language of the Act and the DSSR, as a whole, provides only baseline requirements for LQA eligibility and contemplate[s] further implementing regulations"). Pursuant to that authority, the United States Department of Defense issued further implementing regulations related to LQA payments, stating:

> [This volume] establishes [Department of Defense] policy, delegates authority,
> assigns responsibilities, and authorizes the payment of allowances and
> differentials to [Department of Defense] appropriated fund civilian employees
> who are U.S. citizens living in foreign areas pursuant to the [DSSR] and
> [S]ections 5522, 5584, and 5922 of [T]itle 5, United States Code. . . .

Department of Defense Instruction No. 1400.25, Vol. 1250, *DoD Civilian Personnel Management System: Overseas Allowances and Differentials*, § 1(b)(1) (Feb. 23, 2012) ("DoDI No. 1400.25, Vol. 1250"); *see also* DoDI No. 1400.25, Vol. 1250, § 4(c) (explaining that LQA payments are "intended to be recruitment incentives" and are not to be "automatically . . . granted"). That instruction delegated authority to the heads of the Department of Defense Components with respect to, among other things, LQA payments under DSSR § 031.12. *See* DoDI No. 1400.25, Vol. 1250, § 4(a)(1); *see also Roberts*, 745 F.3d at 1160, 1166 (noting that DoDI No. 1400.25, Vol. 1250 implements the DSSR and also "further delegates LQA authority to the heads of Department of Defense Components"). In accord with that delegation of authority, the Army has authorized LQA payments for civilian employees in South Korea. *See* Army in Korea Regulation 690-10, *Overseas Allowances, Benefits and Entitlements* (Sept. 9, 2016) ("AK Reg. 690-10").[2]

---

[1]DSSR § 031.12 also provides that "Subsection 031.12b may be waived by the head of agency upon determination that unusual circumstances in an individual case justify such action," but there is no indication that such a waiver occurred here. *See generally* Def.'s Mot. for Summary Judgment ("Def.'s Mot."), ECF No. 14; Pl.'s Mot. for Summary Judgment ("Pl.'s Mot."), ECF No. 15.

[2]This 2016 regulation supersedes the previous Army in Korea Regulation 690-10, which was issued on January 9, 2010. *See* Army in Korea Regulation 690-10, *Overseas Allowances, Benefits and Entitlements* (Jan. 9, 2010) (appended to Def.'s Suppl. Br., ECF No. 20, at A27 to A41). Because the two regulations are nearly identical with respect to LQA-eligibility and authorization of LQA payments, the court will only refer to the most recent 2016 regulation in addressing Mr. Reyes' claim for LQA payments from May 1, 2014 to the present.

*B. Mr. Reyes' Employment in South Korea*

On May 31, 2009, Mr. Reyes retired from active duty military service after serving with the Army in South Korea. *See* Compl. at 1; Pl.'s Mot., Ex. 6 (Certificate of Release or Discharge from Active Duty). In June 2009, he accepted a position in South Korea with Serco, a United States corporation. Pl.'s Mot., Ex. 2 (Letter from Steven A. Sutton, Vice President, Serco Inc. to Reyes (June 11, 2009) ("Serco Letter")). While employed at Serco, Mr. Reyes applied for a civilian position with the Army and received an offer for that position in October 2009. Def.'s Mot., App. ("Def.'s App.") at A12 to A15 (Letter from Frederick E. Schumacher, Branch Chief, Dept. of the Army to Reyes (Nov. 2, 2009) ("Army Offer Letter")), ECF No. 14-1.[3] He subsequently resigned from Serco in December 2009 to begin his civilian employment at the United States Army Materiel Support Center in South Korea. *See* Pl.'s Mot., Ex. 10 (Resignation Letter from Reyes to Serco (Nov. 12, 2009)); Army Offer Letter at A12 to A15. Mr. Reyes applied for and received LQA payments from December 7, 2009 to May 1, 2014. *See* Def.'s App. at A7 to A11 (Questionnaire for LQA Determinations from Reyes (Nov. 2, 2009) ("LQA Questionnaire")); Pl.'s Mot., Ex. 1 (Letters from the Army to Reyes (Nov. 9, 2009 to Apr. 22, 2014)).

On May 1, 2013, the Army notified Mr. Reyes that he was not eligible for LQA payments because he did not meet the requirements of DSSR § 031.12(b). Pl.'s Mot., Ex. 12 (Mem. from Clifford M. Dickman, Deputy Director, Civilian Human Resources Agency, Army to Reyes (May 1, 2013) ("Ineligibility Mem.")) at 1-2. Historically, the Department of Defense had taken the position that the "substantially continuous employment" requirement in DSSR § 031.12(b) was "met by employment with one or more employers as long as all the basic eligibility criteria in the DSSR were met and there was no break in service between employers." Compl., Ex. F (Department of Defense Point Paper, *Erroneous Payment of Living Quarters Allowance to Certain Employees* (Jan. 3, 2013) ("Point Paper") at 1. In January 2013, however, the Office of the Under Secretary of Defense distributed a memorandum stating that "as many as 2,000 employees may have been erroneously receiving LQA payments" due to an incorrect interpretation of DSSR § 031.12(b). Pl.'s Mot., Ex. 11 (Mem. from Jessica L. Wright, Acting Principal Deputy, Office of the Under Secretary of Defense (Jan. 3, 2013)) at 1. The memorandum explained that "employees hired overseas after working for more than one employer are not eligible to receive LQA," and thus directed for an audit "to identify employees hired locally overseas who may have received LQA payments erroneously." *Id.* at 1; *see also* Point Paper at 1 ("LQA eligibility requires that an employee remain with the same employer . . . that recruited the individual from the U.S. with no intervening employment prior to [Department of Defense] civilian appointment overseas."). The audit identified Mr. Reyes as an employee improperly receiving LQA payments. Ineligibility Mem. at 1. The Army therefore notified Mr. Reyes that its previous LQA grant was "erroneous" under DSSR § 031.12 because Mr. Reyes

---

[3]The appendix to the government's motion for summary judgment consists of 22 pages relating to Mr. Reyes' employment positions in South Korea, his LQA application, and his appeal to OPM after the Army determined that he was not eligible for LQA payments. The appendix will be cited as "Def.'s App. at A__," showing the pertinent page number.

was "an employee recruited outside the United States who had more than one employer in the overseas area prior to [his] appointment into . . . [f]ederal civilian service." *Id.* at 1-2.[4]

Mr. Reyes appealed that ineligibility decision to OPM. Def.'s App. at A16 to A22 (OPM Compensation Claim Decision (Sept. 18, 2015) ("OPM Decision")). OPM interpreted DSSR § 031.12(b) as permitting LQA payments when "the employee, prior to appointment, had 'substantially continuous employment'" with a qualified entity that "recruited the employee in and provided return transportation to the United States or its territories or possessions." *Id.* at A18. In accord with that interpretation, OPM determined that Mr. Reyes was ineligible under DSSR § 031.12 on two independent grounds: (1) Serco, Mr. Reyes' previous employer before his civilian employment with the Army, recruited Mr. Reyes in South Korea rather than in the United States; and (2) Mr. Reyes failed to demonstrate that Serco "had provided him with return transportation to the United States as an employment benefit." *Id.* at A18 to A19. OPM therefore denied Mr. Reyes' claim for LQA payments. *Id.* at A17 to A22.

### C. *Mr. Reyes' Present Suit*

Mr. Reyes filed suit in this court on March 28, 2016, seeking LQA payments for his civilian employment at the Army Materiel Support Center in South Korea from May 1, 2014 to the present. *See* Compl. at 1. In accord with the court's scheduling order issued on September 1, 2016, ECF No. 11, the parties completed fact discovery, and both parties filed motions for summary judgment in May 2017, *see* Pl.'s Mot.; Def.'s Mot. After the court *sua sponte* raised the question of whether it had jurisdiction over Mr. Reyes' claim, Order of May 31, 2017, ECF No. 16, the parties also filed supplemental briefs regarding jurisdiction, *see* Pl.'s Resp. to the Court, ECF No. 19; Def.'s Suppl. Br. In moving for summary judgment, Mr. Reyes disputes the Army's interpretation of DSSR § 031.12, arguing that he is eligible for and entitled to $94,250 in LQA payments for his employment with the Army in South Korea. *See generally* Pl.'s Mot. The government, relying upon the Army's interpretation of DSSR § 031.12, takes the position that Mr. Reyes is ineligible for LQA payments under the DSSR. *See* Def.'s Mot. at 7-8.

### JURISDICTION

As plaintiff, Mr. Reyes has the burden of establishing jurisdiction. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Pursuant to the Tucker Act, the court has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive

---

[4]The Army also informed Mr. Reyes that he was required to repay the LQA payments he had received since 2009, but that he could seek a waiver of indebtedness from the Defense Finance and Accounting Service ("DFAS"). Ineligibility Mem. at 2; *see also* Pl.'s Mot., Ex. 13 (Letter from Michael Presley, Supervisor, Debt Processing Branch, DFAS to Reyes (Aug. 14, 2013)). Mr. Reyes applied for such a waiver, Pl.'s Mot., Ex. 14 (Waiver/Remission of Indebtedness Application (Feb. 19, 2014)), and DFAS waived Mr. Reyes' debt of $93,033.25 in LQA payments received from December 7, 2009 to April 30, 2013, Pl.'s Mot., Ex. 16 (Letter from Silvia L. Gibson, Director, Debt and Claims Management, DFAS to Reyes (Apr. 29, 2014)).

department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  The Tucker Act waives sovereign immunity and thus allows a plaintiff to sue the United States for money damages, *United States v. Mitchell*, 463 U.S. 206, 212 (1983), but it does not provide a plaintiff with any substantive rights, *United States v. Testan*, 424 U.S. 392, 398 (1976).  "[A] plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part) (citing *Mitchell*, 463 U.S. at 216; *Testan*, 424 U.S. at 398).

In *Roberts*, 745 F.3d 1158, the Federal Circuit considered the court's jurisdiction over a claim for LQA payments and determined that "[t]he Act and the DSSR, standing alone," do not provide this court with jurisdiction because they "are only money-authorizing, not money-mandating." *Id.* at 1162-65.  The court of appeals found jurisdiction in that case, however, when it examined the Act and the DSSR in combination with provisions of DoDI No. 1400.25, Vol. 1250 and Marine Corps Bases Japan Order P12000.2A ("Marine Corps Order").  *Id.* at 1160, 1165-67.  The combination was construed as money-mandating "because the payment of money [was] *required* when the [Marine Corps] Commander, acting pursuant to the [Marine Corps Order], determine[d] that a particular post [was] LQA-eligible or an individual should receive an LQA-continuance (*i.e.*, LQA "shall be paid," 5 U.S.C. § 5922(c), in these instances)." *Id.* at 1166 (emphasis in original) (footnote and citation omitted); *see also* 5 U.S.C. § 5922(c) ("The allowances and differentials authorized by this subchapter shall be paid under regulations prescribed by the President governing . . . payments of the allowances and differentials and the respective rates at which the payments are made.").

Here, the relevant Department of Defense Instruction "authorizes the payment of allowances and differentials to [Department of Defense] appropriated fund civilian employees who are U.S. citizens living in foreign areas pursuant to [the Act and the DSSR]." DoDI No. 1400.25, Vol. 1250, § 1(b)(1).  As a further elaboration, an Army Regulation addresses LQA payments for civilian employees in South Korea, specifically providing:

> a. ELIGIBILITY.  LQA is authorized for U.S. civilian employees who resided permanently in the U.S. from the time they applied for employment until and including the date he or she accepted a formal offer of employment in a foreign area.  Certain employees, such as military members who retire or separate locally in the overseas area, who were recruited outside of the U.S. may also be eligible when the criteria outlined in [the DSSR and DoDI No. 1400.25, Vol. 1250] are met.

AK Reg. 690-10, Ch. 2-2(a).  This regulation also states that "locally hired employees may be granted [LQA payments]" when the position is "announced worldwide," the eligibility requirements in DSSR § 031.12 are met, and the employee "did not previously accept a position for which LQA was not offered." AK Reg. 690-10, Ch. 2-2(c).  Mr. Reyes alleges that he was recruited in South Korea, *see* Pl.'s Mot. at 9-10, and therefore falls within the class of employees recruited outside the United States and hired locally.

The Department of Defense Instruction and Army Regulation, when viewed in combination with the Act and the DSSR, can be money-mandating.  In *Roberts*, a Marine Corps Order stated that an LQA-continuance "*may* be granted . . . at management's discretion," *Roberts*, 745 F.3d at 1166 (emphasis added), but the Federal Circuit nonetheless held that such an Order, examined in conjunction with the Act, the DSSR, and the same Department of Defense Instruction at issue in this case, required payment when the Marine Corps Commander determined that an individual should receive an LQA-continuance, *id.* (citing 5 U.S.C. § 5922(c)); *see also Thomas v. United States*, 122 Fed. Cl. 53, 60 (2015) (relying on *Roberts* to find jurisdiction over an LQA claim where an Army policy "authorized" LQA payments if certain criteria were met).  Similarly, although the Army regulation for South Korea provides that a locally hired employee "*may* be granted" LQA payments when certain requirements are met, *see* AK Reg. 690-10, Ch. 2-2(c) (emphasis added), payment is nonetheless required pursuant to 5 U.S.C. § 5922(c) when an appropriate Army official determines that such an employee has satisfied the eligibility conditions of AK Reg. 690-10 and therefore should receive LQA payments.

Contrastingly, shortly after the decision in *Roberts*, the Federal Circuit determined that this court lacked jurisdiction over a claim for danger pay allowances brought under the Act, 5 U.S.C. § 5928, because there were no implementing instructions or orders that could be fairly construed as money-mandating when viewed in conjunction with the Act and the DSSR. *Acevedo v. United States*, 824 F.3d 1365, 1370 (Fed. Cir. 2016) (explaining that the letters and e-mails relied upon by appellants in that case did not represent an agency-wide policy or constitute a binding directive that would provide a money-mandating substantive source of law).  That decision is distinguishable from the facts presented here, however, because the Department of Defense Instruction and Army Regulation pertaining to South Korea are agency-wide policies. *See Murphy v. United States*, 130 Fed. Cl. 554, 559 (2017) (finding that the Act, DSSR, DoDI No. 1400.25, Vol. 1250, and an Army Regulation provided the court with jurisdiction over a claim for LQA payments).

The government notes that AK Reg. 690-10 is different from the Army Regulation authorizing LQA payments in Europe, as the latter provides that "LQA will be granted" for particular employees stationed in Europe. *See* Def.'s Suppl. Br. at 9-10; Army in Europe Regulation 690-500.592, *Civilian Personnel Living Quarters Allowance*, § 7(a)(1) (Nov. 18, 2005).  Nonetheless, given the strong similarities between the instruction and order in *Roberts* and the instruction and regulation at issue here, the court is bound by the Federal Circuit's precedent set forth in *Roberts*, rather than the contrasting decision by the Circuit in *Acevedo*.  By asserting that he has satisfied the LQA-eligibility requirements and should receive payment as an employee recruited overseas, *see* Compl. at 1; Pl.'s Mot. at 9-10, and taking into account DoDI No. 1400.25, Vol. 1250 and AK Reg. 690-10, Mr. Reyes has sufficiently alleged that he falls within the class of employees identified in AK Reg. 690-10.  The court accordingly has jurisdiction over Mr. Reyes' claim. *See Roberts*, 745 F.3d at 1167 (finding jurisdiction where the implementing instruction and order provided for LQA payments to a particular class and plaintiff alleged that he fell within that class) (citation omitted).[5]

---

[5]Whether Mr. Reyes is in fact within that class or entitled to LQA payments is "a merits issue." *Roberts*, 745 F.3d at 1167.

## STANDARD FOR DECISION

Pursuant to RCFC 56(a), a grant of summary judgment is proper when the pleadings, affidavits, and evidentiary materials of the case demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). A genuine dispute exists when the issue "may reasonably be resolved in favor of either party," *id.* at 250, and a fact is considered material when it "might affect the outcome of the suit under the governing law," *id.* at 248. The moving party has the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court therefore draws all factual inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Summary judgment will be appropriate if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* at 587 (citation omitted).

## ANALYSIS

In seeking LQA payments, Mr. Reyes challenges the Army's determination that he is LQA-ineligible under DSSR § 031.12. *See generally* Pl.'s Mot. Generally, the court defers to an agency's interpretation of its own regulation unless that interpretation is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989) (in turn quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945))). Where an agency interprets regulations promulgated by a different agency, such an interpretation is also afforded deference when the interpreting agency is authorized to adopt or implement the regulations at issue. *See Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 698 (1991) (affording deference to the Department of Labor's ("DOL") interpretation of regulations promulgated by the Department of Health, Education and Welfare ("HEW") because Congress provided DOL with "the authority to interpret HEW's regulations and the discretion to promulgate interim regulations based on a reasonable interpretation thereof"); *Secretary of Labor v. Excel Mining, LLC*, 334 F.3d 1, 6-7 (D.C. Cir. 2003) (affording deference to DOL's interpretation of regulations issued by another agency, where DOL was authorized to adopt and administer those regulations) (citations omitted). Because the Army is authorized to adopt and administer the DSSR, *see* DSSR § 013; DoDI No. 1400.25, Vol. 1250, its interpretation of DSSR § 031.12 is entitled to deference, *see Murphy*, 130 Fed. Cl. at 559, 562 (granting deference to the Army's interpretation of the DSSR) (citing cases); *Bortone v. United States*, 110 Fed. Cl. 668, 676 (2013) (granting deference to the Navy's interpretation of the DSSR) (citing cases).

Here, DSSR § 031.12(b) provides that an employee will only be eligible for LQA payments if, "prior to appointment, the employee was *recruited in* the United States, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, the former Canal Zone, or a possession of the United States." DSSR § 031.12(b) (emphasis added); *see also Thomas*, 122 Fed. Cl. at 67 (noting that plaintiff satisfied the "recruited in" requirement of DSSR § 031.12(b) because plaintiff was recruited in Texas and worked for the firm that recruited him

"continuously" until May 2004, when he began his employment with the Army). When Mr. Reyes applied for and accepted his civilian position at the Army Materiel Support Center in South Korea, he was employed in South Korea by Serco. *See* Serco Letter; Army Offer Letter at A12 to A15. Mr. Reyes acknowledges as much when he states that he "resid[ed] in [South] Korea" prior to his appointment and "was recruited outside of the United States." Pl.'s Mot. at 9; *see also* LQA Questionnaire at A7 (stating that Mr. Reyes applied for his civilian position while living outside the United States).[6] Mr. Reyes was not recruited in the United States by Serco, his previous employer, as required by DSSR § 031.12(b), but rather was already living in South Korea at that time.

Additionally, DSSR § 031.12(b) requires that, prior to appointment, the employee was "in substantially continuous employment . . . under conditions which provided for his[] return transportation to the United States." The offer and acceptance letter from Serco did not provide any return transportation for Mr. Reyes, *see* Serco Letter, and Mr. Reyes has not argued otherwise, *see generally* Pl.'s Mot. Rather, Mr. Reyes contends that the Army provided for his return transportation when he retired in May 2009 and when he began his civilian employment in December 2009. *See id.* at 10. Such provisions from the Army, even if accepted as true, do not support Mr. Reyes' LQA claim because DSSR § 031.12(b) requires that Serco, Mr. Reyes' employer immediately before his civilian appointment, must have agreed to provide the return transportation. *See Bortone*, 110 Fed. Cl. at 680 (affording no weight to the return transportation provisions from plaintiff's current government employer on the ground that "DSSR § 031.12 by its plain terms requires that the employee demonstrate that he had a return agreement in place with the *previous* employer") (emphasis added). Because Mr. Reyes has failed to show that Serco provided for such return transportation, he is not eligible for LQA payments under DSSR § 031.12(b). *See Thomas*, 122 Fed. Cl. at 67 (holding that plaintiff failed to satisfy DSSR § 031.12(b) because, at the time plaintiff resigned from his previous employment and was hired by the Army, his previous employer's contract did not include return transportation) (citing *Urban v. United States*, 119 Fed. Cl. 57 (2014)); *Bortone*, 110 Fed. Cl. at 680 ("Where, as here, the undisputed facts demonstrate that the plaintiff had no return agreement with the previous employer, the plaintiff cannot successfully claim LQA eligibility under DSSR § 031.12 even if all the remaining elements are established or in dispute.").[7]

---

[6]In addressing DSSR § 031.12(a), Mr. Reyes asserts that his "actual place of residence in the place to which the quarters allowance applies at the time of receipt thereof [was] fairly attributable to his[] employment by the United States [g]overnment." Pl.'s Mot. at 9 (quoting DSSR § 031.12(a)). This assertion is correct, but unpersuasive in context because DSSR § 031.12 provides that Subsection 031.12(a) *and* Subsection 031.12(b) must be satisfied before an employee may qualify for LQA payments. *See* DSSR § 031.12; *see also Thomas*, 122 Fed. Cl. at 67 ("[T]o qualify for LQA, [plaintiff] must have met the requirements of DSSR §§ 031.12a and b.").

[7]Mr. Reyes emphasizes that the Army previously granted him LQA payments, *see generally* Pl.'s Mot., but such an occurrence does not bind the government or alter the court's analysis here, *see Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 426 (1990) ("[T]he equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized.") (citing *Immigration Naturalization Serv. v. Pangilinan*, 486 U.S. 875, 883 (1988));

In sum, Mr. Reyes is not eligible for LQA payments because he does not meet the requirements set forth in DSSR § 031.12. The Army's ineligibility determination was therefore not "plainly erroneous or inconsistent" with that regulation.

## CONCLUSION

For the reasons stated, Mr. Reyes' motion for summary judgment is DENIED and the government's motion for summary judgment is GRANTED. The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

_____
Charles F. Lettow
Judge

---

*Falso v. Office of Pers. Mgmt.*, 116 F.3d 459, 460 (Fed. Cir. 1997) ("[T]he government cannot be estopped from denying benefits that are not permitted by law[,] even where the claimant relied on the mistaken advice of a government official or agency.") (citing *Richmond*, 496 U.S. at 416, 434); *see also Thomas*, 122 Fed. Cl. at 67-68 ("Regardless of how it justified its decision, the Army Corps had no power to grant LQA in situations not authorized by the DSSR, and to have done so would have been without a basis in the law.") (citations and footnote omitted).